1  KAREN P. HEWITT
   United States Attorney
2  REBECCA S. KANTER
   Assistant U.S. Attorney
3  California State Bar No. 230257
   United States Attorney's Office
4  880 Front Street, Room 6293
   San Diego, California 92101-8893
5  Phone: (619) 557-6747
   Fax: (619) 235-2757
6  E-mail: rebecca.kanter@usdoj.gov

7
   Attorneys for Plaintiff
8  United States of America

9
                          UNITED STATES DISTRICT COURT
10
                        SOUTHERN DISTRICT OF CALIFORNIA
11

12  UNITED STATES OF AMERICA,          )  Criminal Case No. 08cr0015-IEG
                                       )
13            Plaintiff,               )  **RESPONSE AND OPPOSITION TO**
                                       )  **DEFENDANT'S MOTIONS:**
14       v.                            )
                                       )  **(1)  DISMISS THE INDICTMENT DUE TO**
15  LUIS ALBERTO HERNANDEZ-            )       **MISINSTRUCTION OF THE GRAND JURY**
              VENEGAS,                 )  **(2)  TO COMPEL DISCOVERY**
16                                     )  **(3)  TO FILE FURTHER MOTIONS**
                                       )
17                                     )       Date:  January 28, 2008
              Defendant.               )       Time:  2:00 p.m.
18                                     )       Court: The Hon.  Irma E.  Gonzelez
                                       )
19  _____

20

21       COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel,

22  United States Attorney, Karen P. Hewitt, and Assistant U.S. Attorney Rebecca S. Kanter, and hereby

23  files its Response and Opposition to Defendant's Motions to Dismiss the Indictment Due to

24  Misinstruction of the Grand Jury, Compel Discovery and File Further Motions.  This Response and

25  Opposition is based upon the files and records of this case, together with the attached Statement of Facts

26  and Memorandum of Points and Authorities.

27  //

28  //
    //

                                                 Criminal Case No. 08cr0015-IEG

**I**

**STATEMENT OF FACTS**

**A.     Defendant's Apprehension**

On December 3, 2007, at approximately 1:10 a.m., a seismic sensor alerted on the southwest of Worm Farm, approximately four miles west of the San Ysidro Port of Entry and one mile north of the United States/Mexico international border. At approximately 6:30 a.m., after searching for approximately five hours, Border Patrol Agent Lee A. Miller found Jorge Alberto Hernandez-Venegas ("Defendant") attempting to conceal himself in dense brush. Agent Miller identified himself as a Border Patrol Agent and questioned the subject as to his citizenship. Defendant admitted to being a citizen and national of Mexico illegally present in the United States. Defendant was transported to the Imperial Beach Border Patrol Station for processing.

**B.     Defendant's Criminal and Immigration Record**

Defendant's adult criminal record reveals felony convictions in March, 2003, for Making Terrorist Threats, in violation of California Penal Code Section 422 with an enhancement under Penal Code Section 186.22(b)(1) for Commission of Felony for Benefit of a Street Gang. He also sustained a conviction in December, 2005, for Second Degree Burglary, in violation of California Penal Code Section 459.

Defendant was removed on November 10, 2004, pursuant to a Final Administrative Removal Order, and again on November 26, 2007.

**II.**

**DEFENDANT'S MOTION TO DISMISS THE INDICTMENT DUE TO MISINSTRUCTION OF THE GRAND JURY**

**A.     Introduction**

Defendant makes contentions relating to two separate instructions given to the grand jury during its impanelment by District Judge Larry A. Burns on January 11, 2007. Although recognizing that the Ninth Circuit in United States v. Navarro-Vargas, 408 F.3d 1184 (9th Cir. 2005) (en banc) generally found the two grand jury instructions constitutional, Defendant here contends Judge Burns went beyond the text of the approved instructions, and by so doing rendered them improper to the point that the

2                         Criminal Case No. 08cr0015-IEG

1  Indictment should be dismissed.

2  Defendant urges this Court to dismiss the Indictment on two separate bases relating to grand jury

3  procedures, both of which were discussed in United States v. Isgro, 974 F.2d 1091 (9th Cir. 1992).

4  Concerning the first attacked instruction, Defendant urges this Court to dismiss the Indictment by

5  exercising its supervising powers over grand jury procedures. This is a practice the Supreme Court

6  discourages as Defendant acknowledges, citing United States v. Williams, 504 U.S. 36, 50 (1992)

7  ("Given the grand jury's operational separateness from its constituting court, it should come as no

8  surprise that we have been reluctant to invoke the judicial supervisory power as a basis for prescribing

9  modes of grand jury procedure. "). [Id.] Isgro reiterated:

10     [A] district court may draw on its supervisory powers to dismiss an indictment.   The
       supervisory powers doctrine "is premised on the inherent ability of the federal courts to
11     formulate procedural rules not specifically required by the Constitution or Congress to
       supervise the administration of justice."  Before it may invoke this power, a court must
12     first find that the defendant is actually prejudiced by the misconduct.   Absent such
       prejudice-that is, absent "'grave' doubt that the decision to indict was free from the
13     substantial influence of [the misconduct]"-a dismissal is not warranted.

14  974 F.2d at 1094 (citation omitted, emphasis added). Concerning the second attacked instruction, in an

15  attempt to dodge the holding in Williams, Defendant appears to base his contentions on the Constitution

16  as a reason to dismiss the Indictment. [Def's Memorandum p.  8 ("A grand jury so badly misguided is

17  no grand jury at all under the Fifth Amendment").] Concerning that kind of a contention Isgro stated:

18     [A] court may dismiss an indictment if it perceives constitutional error that interferes
       with the grand jury's independence and the integrity of the grand jury proceeding.
19     "Constitutional error is found where the 'structural protections of the grand jury have
       been so compromised as to render the proceedings fundamentally unfair, allowing the
20     presumption of prejudice' to the defendant." Constitutional error may also be found "if
       [the] defendant can show a history of prosecutorial misconduct that is so systematic and
21     pervasive that it affects the fundamental fairness of the proceeding or if the
       independence of the grand jury is substantially infringed."

22
    974 F.2d at 1094 (citation omitted).
23

       The portions of the two relevant instructions approved in Navarro-Vargas were:
24

          You cannot judge the wisdom of the criminal laws enacted by Congress, that is,
25     whether or not there should or should not be a federal law designating certain activity
       as criminal.   That is to be determined by Congress and not by you.
26

    408 F.3d at 1187, 1202.
27

          The United States Attorney and his Assistant United States Attorneys will
28     provide you with important service in helping you to find your way when confronted

                                                      3                    Criminal Case No. 08cr0015-IEG

1    with complex legal problems.    It is entirely proper that you should receive this
2    assistance.  If past experience is any indication of what to expect in the future, then you
      can expect candor, honesty, and good faith in matters presented by the government
3    attorneys.

4    408 F.3d at 1187, 1206.

5    Concerning the "wisdom of the criminal laws" instruction, the court stated it was constitutional

6    because, among other things, "[i]f a grand jury can sit in judgment of wisdom of the policy behind a law,

7    then the power to return a no bill in such cases is the clearest form of 'jury nullification.'" 408 F.3d at

8    1203 (footnote omitted).  "Furthermore, the grand jury has few tools for informing itself of the policy

9    or legal justification for the law;  it receives no briefs or arguments from the parties.   The grand jury

10   has little but its own visceral reaction on which to judge the 'wisdom of the law.'" Id.

11   Concerning the "United States Attorney and his Assistant United States Attorneys" instruction,

12   the court stated:

13           We also reject this final contention and hold that although this passage may
         include unnecessary language, it does not violate the Constitution.    The "candor,
14       honesty, and good faith" language, when read in the context of the instructions as a
         whole, does not violate the constitutional relationship between the prosecutor and grand
15       jury. . . . The instructions balance the praise for the government's attorney by informing
         the grand jurors that some have criticized the grand jury as a "mere rubber stamp" to the
16       prosecution and reminding them that the grand jury is "independent of the United States
         Attorney[.]"

17   408 F.3d at 1207. Id.  "The phrase is not vouching for the prosecutor, but is closer to advising the grand

18   jury of the presumption of regularity and good faith that the branches of government ordinarily afford

19   each other." Id.

20   **B.      The Expanded "Wisdom of the Criminal Laws" Instruction Was Proper**

21   Concerning whether the new grand jurors should concern themselves with the wisdom of the

22   criminal laws enacted by Congress, Judge Burns' full instruction stated:

23       You understood from the questions and answers that a couple of people were excused,
         I think three in this case, because they could not adhere to the principle that I'm about
24       to tell you.

25           But it's not for you to judge the wisdom of the criminal laws enacted by
         congress; that is, whether or not there should be a federal law or should not be a federal
26       law designating certain activity is criminal is not up to you.   That's a judgment that
         congress makes.
27

28           And if you disagree with the judgment made by congress, then your option is not
         to say "Well I'm going to vote against indicting even though I think that the evidence

                                                        4                    Criminal Case No. 08cr0015-IEG

1 is sufficient" or "I'm going to vote in favor of even though the evidence may be insufficient." Instead, your obligation is to contact your congressman or advocate for
2 a change in the laws, but not to bring your personal definition of what the law ought to be and try to impose that through applying it in a grand jury setting.
3 Partial Transcript pp. 8-9.

4 Defendant acknowledges that in line with Navarro-Vargas, "Judge Burns instructed the grand

5 jurors that they were forbidden 'from judg[ing] the wisdom of the criminal laws enacted by Congress;

6 that is, whether or not there should be a federal law or should not be a federal law designating certain

7 activity [as] criminal is not up to you.'" [Def's Memorandum p. 2.] In concocting his theory of why

8 Judge Burns erred, Defendant posits that the expanded instruction renders irrelevant the debate about

9 what the word "should" means. [Id. at p. 15.] Defendant contends, "the instruction flatly bars the grand

10 jury from declining to indict because they disagree with a proposed prosecution." [Id.] Defendant

11 further contends that Judge Burns reinforced this flat prohibition when he "referred to an instance in the

12 grand juror selection process in which he excused three potential jurors." [Id.] This argument combines

13 two of the holdings in Navarro-Vargas in the hope they will blend into one. They do not.

14 Navarro-Vargas does permit flatly barring the grand jury from disagreeing with the wisdom of

15 the criminal laws. The statement, "[y]ou cannot judge the wisdom of the criminal laws enacted by

16 Congress," (emphasis added) authorized by Navarro-Vargas, 408 F.3d at 1187, 1202, is not an

17 expression of discretion. Jury nullification is forbidden although acknowledged as a sub rosa fact in

18 grand jury proceedings. 408 F.3d at 1204. In this respect Judge Burns was absolutely within his rights,

19 and within the law, when he excused the three prospective grand jurors because of their expressed

20 inability to apply the laws passed by Congress. Similarly, it was proper for him to remind the impaneled

21 grand jurors that they could not question the wisdom of the laws. As we will establish, this reminder

22 did not pressure the grand jurors to give up their discretion not to return an indictment. Judge Burns'

23 words cannot be parsed to say that they flatly barred the grand jury from declining to indict because the

24 grand jurors disagree with a proposed prosecution, because they do not say that. That aspect of a grand

25 jury's discretionary power (i.e. disagreement with the prosecution) was dealt with in Navarro-Vargas

26 in its discussion of another instruction wherein the term "should" was germane.[1] 408 F.3d at 1204-06

27

28 [1] That instruction is not at issue here. It read as follows:

(continued...)

1   ("'Should' Indict if Probable Cause Is Found").  This other instruction bestows discretion on the grand

2   jury not to indict.[2/]  In finding this instruction constitutional, the court stated in words that ring true here,

3   "It is the grand jury's position in the constitutional scheme that gives it its independence, not any

4   instructions that a court might offer."  408 F.3d at 1206.  The other instruction was also given by Judge

5   Burns in his own fashion as follows:

6           The function of the grand jury, in federal court at least, is to determine probable
        cause.  That's the simple formulation that I mentioned to a number of you during the jury
7       selection process.  Probable cause is just an analysis of whether a crime was committed
        and there's a reasonable basis to believe that and whether a certain person is associated
8       with the commission of that crime, committed it or helped commit it.

9           If the answer is yes, then as grand jurors your function is to find that the probable
        cause is there, that the case has been substantiated, and it should move forward.  If
10      conscientiously, after listening to the evidence, you say "No, I can't form a reasonable
        belief has anything to do with it, then your obligation, of course, would be to decline to
11      indict, to turn the case away and not have it go forward.

12  Partial Transcript pp. 3-4.

13          Probable cause means that you have an honestly held conscientious belief and
        that the belief is reasonable that a federal crime was committed and that the person to be
14      indicted was somehow associated with the commission of that crime.  Either they
        committed it themselves or they helped someone commit it or they were part of a
15      conspiracy, an illegal agreement, to commit that crime.

16          To put it another way, you should vote to indict when the evidence presented to

17  _____

18      [1/](...continued)
            [Y]our task is to determine whether the government's evidence as presented to
19      you is sufficient to cause you to conclude that there is probable cause to believe that the
        accused is guilty of the offense charged.   To put it another way, you should vote to
20      indict where the evidence presented to you is sufficiently strong to warrant a reasonable
        person's believing that the accused is probably guilty of the offense with which the
21      accused is charged.

22  408 F.3d at 1187.

23      [2/]The court upheld the instruction stating:

24          This instruction does not violate the grand jury's independence.   The language
        of the model charge does not state that the jury "must" or "shall" indict, but merely that
25      it "should" indict if it finds probable cause.   As a matter of pure semantics, it does not
        "eliminate discretion on the part of the grand jurors," leaving room for the grand jury to
26      dismiss even if it finds probable cause.

27  408 F.3d at 1205 (confirming holding in United States  v. Marcucci, 299 F.3d 1156, 1159 (9th Cir.
    2002) (per curiam)).  "In this respect, the grand jury has even greater powers of nonprosecution than the
28  executive because there is, literally, no check on a grand jury's decision not to return an indictment.
    408 F.3d at 1206.

you is sufficiently strong to warrant a reasonable person to believe that the accused is probably guilty of the offense which is proposed.

Partial Transcript p. 23.

While the new grand jurors were told by Judge Burns that they could not question the wisdom of the criminal laws per Navarro-Vargas, they were also told that they had the discretion not to return an indictment per Navarro-Vargas. If a potential grand juror could not be dissuaded from questioning the wisdom of the criminal laws, that grand juror should be dismissed as a potential jury nullification advocate. See Merced v. McGrath, 426 F.3d 1076, 1079-80 (9th Cir. 2005). Thus, there was no error requiring dismissal of this Indictment by this Court exercising its supervisory powers.

Although Defendant argues that Judge Burns used the excusing of the prospective grand jurors as a method of coercing the impaneled grand jurors to return indictments every case where there is probable cause, the Partial Transcript reveals that did not happen. When instructing the impaneled grand jurors Judge Burns said:

You understood from the questions and answers that a couple of people were excused, I think three in this case, because they could not adhere to the principle that I'm about to tell you.

But it is not for you to judge the wisdom of the criminal laws enacted by congress; that is whether or not there should be a federal law or should not be a federal law designating certain activity as criminal is not up to you.

[Partial Transcript, p. 8.] This passage simply does not evoke the "you must indict no matter what" scenario proposed by Defendant. Judge Burns was simply reminding the impaneled grand jurors of their obligation not to judge the wisdom of the criminal laws, which all the cases allow him to do. Further, a reading of the dialogues between Judge Burns and the three excused jurors found in the Supplemental Transcript reflects a measured, thoughtful, almost mutual decision, that those three individuals should not serve on the grand jury because of their views. Judge Burn's reference back to those three colloquies cannot be construed as pressuring the impaneled grand jurors, but merely bespeaks a reminder to the grand jury of their duties.

Finally, even if there was an error, Defendant has not demonstrated he was actually prejudiced thereby, a burden he has to bear. "Absent such prejudice--that is, absent 'grave' doubt that the decision to indict was free from the substantial influence of [the misconduct]'--a dismissal is not warranted."

7                    Criminal Case No. 08cr0015-IEG

1  <u>Isgro</u>, 974 F.2d at 1094.

2  **C.    The Addition to the "United States Attorney and his Assistant United States Attorneys"**
   **Instruction Did Not Violate the Constitution**

3

4  Concerning the new grand jurors' relationship to the United States Attorney and the Assistant

   U.S. Attorneys, Judge Burns stated:
5

6         Now, again, this emphasizes the difference between the function of the grand jury
       and the trial jury.  You're all about probable cause.  If you think that there's evidence out
       there that might cause you to say "well, I don't think probable cause exists," then it's
7      incumbent upon you to hear that evidence as well.  As I told you, in most instances, the
       U.S. Attorneys are duty-bound to present evidence that cuts against what they may be
8      asking you to do if they're aware of that evidence.

9  Partial Transcript p. 20.[3/]

10        As a practical matter, you will work closely with government lawyers.  The U.S.
       Attorney and the Assistant U.S. Attorneys will provide you with important services and
11     help you find your way when you're confronted with complex legal matters.  It's entirely
       proper that you should receive the assistance from the government lawyers.
12
          But at the end of the day, the decision about whether a case goes forward and an
13     indictment should be returned is yours and yours alone.  If past experience is any
       indication of what to expect in the future, then you can expect that the U.S. Attorneys
14     that will appear in front of you will be candid, they'll be honest, that they'll act in good
       faith in all matters presented to you.
15  Partial Transcript pp. 26-27.

16     Defendant contends that the instructions discourage investigation by creating a presumption that

17  in cases where the prosecutor does not present exculpatory evidence, no exculpatory evidence exists.

18  [<u>Id.</u> at 8.]  Defendant then concludes that "[a] grand jury so badly misguided is no grand jury at all under

19  the Fifth Amendment.  [<u>Id.</u>]

20     Frankly, Judge Burns' statement that "the U.S. Attorneys are duty-bound to present evidence

21  that cuts against what they may be asking you to do if they're aware of that evidence," is directly

22  contradicted by <u>United States v. Williams</u>, 504 U.S. 36, 51-53 (1992) ("If the grand jury has no

23  obligation to consider all '<u>substantial</u> exculpatory' evidence, we do not understand how the prosecutor

24

25  ───────────────

26     [3/]Just prior to this instruction, Judge Burns had informed the grand jurors that:

27     [T]hese proceedings tend to be one-sided necessarily. . . . Because it's not a full-blown
       trial, you're likely in most cases not to hear the other side of the story, if there is another
       side to the story.
28

   Partial transcript p. 19.

1 can be said to have a binding obligation to present it." (emphasis added)).  However, the analysis does

2 not stop there.  Prior to assuming his judicial duties, Judge Burns was a member of the United States

3 Attorney's Office, and made appearances in front of the federal grand jury.  As such he was undoubtedly

4 aware of the provisions in the United States Attorneys' Manual ("USAM").[4/]  Specifically, it appears

5 he is aware of USAM Section 9-11.233 thereof which reads:

6         In <u>United States v. Williams</u>, 112 S.Ct. 1735 (1992), the Supreme Court held that
        the Federal courts' supervisory powers over the grand jury did not include the power to
7        make a rule allowing the dismissal of an otherwise valid indictment where the prosecutor
        failed to introduce substantial exculpatory evidence to a grand jury. It is the <u>policy</u> of the
8        Department of Justice, however, that when a prosecutor conducting a grand jury inquiry
        is personally aware of <u>substantial evidence that directly negates the guilt</u> of a subject of
9        the investigation, the prosecutor <u>must present or otherwise disclose</u> such evidence to the
        grand jury before seeking an indictment against such a person. While a failure to follow
10       the Department's policy should <u>not result in dismissal of an indictment</u>, appellate courts
        <u>may refer violations of the policy to the Office of Professional Responsibility</u> for review.

11
(Emphasis added.)[5/]  This policy was reconfirmed in USAM 9-5.001, Policy Regarding Disclosure of
12
Exculpatory and Impeachment Information, Paragraph "A," "this policy does not alter or supersede the
13
policy that requires prosecutors to disclose '<u>substantial evidence</u> that directly negates the guilt of a
14
subject of the investigation' to the grand jury before seeking an indictment, <u>see</u> USAM §9-11.233."
15
(Emphasis added.)[6/]
16
        The facts that Judge Burns' statement contradicts <u>Williams</u>, but is in line with self-imposed
17
guidelines for United States Attorneys, does not create the constitutional crisis proposed by Defendant.
18
No improper presumption/inference was created when Judge Burns reiterated what he knew to be a self-
19
imposed duty to the new grand jurors.  Simply stated, in the vast majority of the cases the reason the
20
prosecutor does not present "substantial" exculpatory evidence, is because no "substantial" exculpatory
21

22
        [4/]The  USAM  is  available  on-line  at  www.usdoj.gov/usao/eousa/foia_reading_room/
23 usam/index.html.

24      [5/]<u>See</u> www.usdoj.gov/usao/eousa/foia_reading_room/usam/ title9/11mcrm.htm.

25      [6/]<u>See</u> www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/5mcrm.htm. Similarly, this new
section does not bestow any procedural or substantive rights on defendants.
26
        Under this policy, the government's disclosure will exceed its constitutional obligations.
27      This expanded disclosure policy, however, does not create a general right of discovery
        in criminal cases. Nor does it provide defendants with any additional rights or remedies.
28
USAM 9-5.001, ¶ "E".  <u>See</u> www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/ 5mcrm.htm.

1   evidence exists.[7]  If it does exist, as mandated by the USAM, the evidence should be presented to the

2   grand jury by the Assistant U.S. Attorney.  Even if there is some nefarious slant to the grand jury

3   proceedings when the prosecutor does not present any "substantial" exculpatory evidence, because there

4   is none, the negative inference created thereby in the minds of the grand jurors is legitimate.  In cases

5   such as Defendant's, the Government has no "substantial" exculpatory evidence generated from its

6   investigation or from submissions tendered by the defendant.  There is nothing wrong  in this scenario

7   with a grand juror inferring that there is no "substantial" exculpatory evidence, or even if some

8   exculpatory evidence were presented, the evidence presented represents the universe of all available

9   exculpatory evidence.

10          Further, just as the instruction language regarding the United States Attorney attacked in

11  Navarro-Vargas was found to be "unnecessary language [which] does not violate the Constitution," 408

12  F.3d at 1207, so too the "duty-bound" statement was unnecessary when charging the grand jury

13  concerning its relationship with the United States Attorney and her Assistant U.S. Attorneys, and does

14  not violate the Constitution.  In United States v. Isgro, 974 F.2d 1091 (9th Cir. 1992), the Ninth Circuit

15  while reviewing Williams established that there is nothing in the Constitution which requires a

16  prosecutor to give the person under investigation the right to present anything to the grand jury

17  (including his or her testimony or other exculpatory evidence), and the absence of that information does

18  not require dismissal of the indictment.  974 F.2d at 1096 ("Williams clearly rejects the idea that there

19  exists a right to such 'fair' or 'objective' grand jury deliberations.").  That the USAM imposes a duty

20  on United States Attorneys to present "substantial" exculpatory evidence to the grand jury is irrelevant

21  since by its own terms the USAM excludes defendants from reaping any benefits from the self-imposed

22  policy.  Therefore, while the "duty-bound" statement was an interesting tidbit of information, it was

23  unnecessary in terms of advising the grand jurors of their rights and responsibilities, and does not cast

24

25  _____

26      [7]Judge Burns also told the grand jurors that:

27      [T]hese proceedings tend to be one-sided necessarily. . . . Because it's not a full-blown
        trial, you're likely in most cases not to hear the other side of the story, if there is another
        side to the story.

28  Partial transcript p. 19.

                                                        10            Criminal Case No. 08cr0015-IEG

1  an unconstitutional pall upon the instructions which requires dismissal of the indictment in this case or

2  any case.  The grand jurors were repeatedly instructed by Judge Burns that, in essence, the United Sates

3  Attorneys are "good guys," which was authorized by Navarro-Vargas. 408 F.3d at 1206-07 ("laudatory

4  comments . . . not vouching for the prosecutor").  But he also repeatedly "remind[ed] the grand jury that

5  it stands between the government and the accused and is independent,"  which was also required by

6  Navarro-Vargas.  408 F.3d at 1207.  In this context the unnecessary "duty-bound" statement does not

7  mean the instructions were constitutionally defective requiring dismissal of this indictment or any

8  indictment.

9  The "duty bound" statement constitutional contentions raised by Defendant do not indicate that

10  the "'structural protections of the grand jury have been so compromised as to render the proceedings

11  fundamentally unfair, allowing the presumption of prejudice' to the defendant," and "[the] defendant

12  can[not] show a history of prosecutorial misconduct that is so systematic and pervasive that it affects

13  the fundamental fairness of the proceeding or if the independence of the grand jury is substantially

14  infringed."  Isgro, 974 F.2d at 1094 (citation omitted).  Therefore, this Indictment, or any other

15  indictment, need not be dismissed.

16  **III**

17  **DEFENDANT'S MOTIONS TO COMPEL DISCOVERY AND PRESERVE EVIDENCE**

18  On December 13, 2007, the Government produced 57 pages of discovery for Defendant which

19  included the reports from the Border Patrol Agents, summaries of the statements made by Defendant,

20  documentation regarding Defendant's criminal history and conviction documents. On January 15, 2008,

21  the Government produced an additional 21 pages of discovery pertaining to Defendant's immigration

22  history, which Defendant picked up the same day.

23  **(1)**    **Defendant's Statements**

24  The Government recognizes its obligation, under Rules 16(a)(1)(A) and 16(a)(1)(B), to provide

25  to Defendant the substance of Defendant's oral statements and written statements.  (Unless otherwise

26  noted, all references to "Rules" refers to the Federal Rules of Criminal Procedure.)  The Government

27  has produced all of the Defendant's statements that are known to the undersigned Assistant U.S.

28  Attorney at this date.  If the Government discovers additional oral or written statements that require

1    disclosure under Rule 16(a)(1)(A) or Rule 16(a)(1)(B), such statements will be promptly provided.

2    **(2)    Defendant's Prior Record**

3    The Government has provided Defendant with documentation regarding his prior criminal record

4    and thereby fulfilled its duty of discovery under Rule 16(a)(1)(D). See United States v. Audelo-

5    Sanchez, 923 F.2d 129 (9th Cir. 1990). To the extent that the Government determines that there are any

6    additional documents reflecting Defendant's prior criminal record, the Government will provide those

7    to Defendant.

8    **(3)    Arrest Reports, Notes, and Dispatch Tapes**

9    The Government has provided Defendant with all known reports related to Defendant's arrest

10   in this case. The Government is not aware at this time of the existence of any dispatch tapes relevant

11   to this case, but will attempt to determine whether any such tapes exist. The Government will continue

12   to comply with its obligation to provide to Defendant all reports subject to Rule 16(a)(1)(A). The

13   Government has no objection to the preservation of the agents' handwritten notes. See United States

14   v. Harris, 543 F.2d 1247, 1253 (9th Cir. 1976) (agents must preserve their original notes of interviews

15   of an accused or prospective government witnesses). However, the Government objects to providing

16   Defendant with a copy of the rough notes at this time. The Government is not required to produce the

17   notes pursuant to the Jencks Act because the notes do not constitute "statements" (as defined 18 U.S.C.

18   § 3500(e)) unless the notes (1) comprise both a substantially verbatim narrative of a witness' assertion,

19   and (2) have been approved or adopted by the witness. United States v. Spencer, 618 F.2d 605, 606-07

20   (9th Cir. 1980). The notes are not Brady material because, as discussed further, the notes do not present

21   any material exculpatory information or any evidence favorable to Defendant that is material to guilt

22   or punishment. If, during a future evidentiary hearing, certain rough notes become particularly relevant,

23   the notes in question will be made available to Defendant.

24   **(4)    Documents and Tangible Objects**

25   The Government has complied and will continue to comply with Rule 16(a)(1)(E) in allowing

26   Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy documents and

27   tangible objects that are within its possession, custody, or control, and that is either material to the

28   preparation of Defendant's defense, or is intended for use by the Government as evidence during its

1   case-in-chief at trial, or was obtained from or belongs to Defendant, including Defendant's A-file.  The

2   Government need not, however, produce rebuttal evidence in advance of trial.  United States v. Givens,

3   767 F.2d 574, 584 (9th Cir. 1984).

4   **(5)     Report of Scientific Tests or Examinations**

5          At this time, the Government is unaware of any scientific tests or examinations in this case.  If

6   the Government has becomes aware of any such tests, the results will be provided to Defendant within

7   accordance with Rule 16(a)(1)(F) when those tests results are received.

8   **(6)     Expert Witness**

9          Prior to the time of trial, the Government will give the requisite notice and provide discovery

10  regarding any expert witness anticipated to be used at trial pursuant to Fed. R. Crim. P. 16(a)(1)(G).

11  **(7)     Brady Material**

12         The Government will perform its duty under Brady v. Maryland, 373 U.S. 83 (1963) to disclose

13  material exculpatory information or evidence favorable to Defendant when such evidence is material

14  to guilt or punishment.   The Government recognizes that its obligation under Brady covers not only

15  exculpatory evidence, but also evidence that could be used to impeach witnesses who testify on behalf

16  of the United States.  See Giglio v. United States, 405 U.S. 150, 154 (1972); United States v. Bagley,

17  473 U.S. 667, 676-77 (1985).  This obligation also extends to evidence that was not requested by the

18  defense.  Bagley, 473 U.S.  at 682; United States v. Agurs, 427 U.S. 97, 107-10 (1976).  "Evidence is

19  material, and must be disclosed (pursuant to Brady), 'if there is a reasonable probability that, had the

20  evidence been disclosed to the defense, the result of the proceeding would have been different.'"

21  Carriger v. Stewart, 132 F.3d 463, 479 (9th Cir. 1997) (en banc).  The final determination of materiality

22  is based on the "suppressed evidence considered collectively, not item by item."  Kyles v. Whitley, 514

23  U.S. 419, 436-37 (1995).

24         Brady does not, however, mandate that the Government open all of its files for discovery.  See

25  United States v. Henke, 222 F.3d 633, 642-44 (9th Cir. 2000) (per curiam).  Under Brady, the United

26  States is not required to provide: (1) neutral, irrelevant, speculative, or inculpatory evidence (see United

27  States v. Smith, 282 F.3d 758, 770 (9th Cir. 2002)); (2) evidence available to the defendant from other

28  sources (see United States v. Bracy, 67 F.3d 1421, 1428-29 (9th Cir. 1995)); (3) evidence that the

1   defendant already possesses (see United States v. Mikaelian, 168 F.3d 380-389-90 (9th Cir. 1999)

2   amended by 180 F.3d 1091 (9th Cir. 1999)); or (4) evidence that the undersigned Assistant U.S.

3   Attorney could not reasonably be imputed to have knowledge or control over.  See United States v.

4   Hanson, 262 F.3d 1217, 1234-35 (11th Cir. 2001).    Brady does not require the Government "to create

5   exculpatory evidence that does not exist," United States v. Sukumolahan, 610 F.2d 685, 687 (9th Cir.

6   1980), but only requires that it "supply a defendant with exculpatory information of which it is aware."

7   United States v. Flores, 540 F.2d 432, 438 (9th Cir. 1976).

8   **(8)      Request for Preservation of Evidence**

9          The Constitution requires the Government to preserve evidence "that might be expected to play

10  a significant role in the suspect's defense." California v. Trombetta, 467 U.S. 479, 488 (1984).  To

11  require preservation by the Government, such evidence must (1) "possess an exculpatory value that was

12  apparent before the evidence was destroyed," and (2) "be of such a nature that the defendant would be

13  unable to obtain comparable evidence by other reasonably available means." Id. at 489; see also Cooper

14  v. Calderon, 255 F.3d 1104, 1113-14 (9th Cir. 2001).  The Government has made every effort to

15  preserve evidence it deems to be relevant and material to this case, including sending a letter to the

16  agency in charge on January 16, 2008, requesting the specific preservation of evidence.  Any failure to

17  gather and preserve evidence, however, would not violate due process absent bad faith by the

18  Government that results in actual prejudice to the Defendant.  See Illinois v. Fisher, 540 U.S.1174, 124

19  S.Ct. 1200 (2004) (per curiam); Arizona v. Youngblood, 488 U.S. 51, 57-58 (1988); United States v.

20  Rivera-Relle, 322 F.3d 670 (9th Cir. 2003); Downs v. Hoyt, 232 F.3d 1031, 1037-38 (9th Cir. 2000).

21  **(9)      Any Proposed 404(b) Evidence**

22         The Government will disclose in advance of trial the general nature of any "other bad acts"

23  evidence that the United States intends to introduce at trial pursuant to Fed. R. Evid. 404(b).  Evidence

24  should not be treated as "other bad acts" evidence under Fed. R. Evid. 404(b) when the evidence

25  concerning the other bad acts and the evidence concerning the crime charged are "inextricably

26  intertwined." United States v. Soliman, 812 F.2d 277, 279 (9th Cir. 1987).

27  **(10)     Witness Addresses**

28         The Government has provide Defendant with the reports containing the names, work addresses,

1   and telephone numbers of the inspectors, officers and special agents who asked questions of Defendant

2   and were witnesses to the event.  In its trial memorandum, the Government will provide Defendant with

3   a list of all witnesses whom it intends to call in its case-in-chief, although delivery of such a witness list

4   is not required.  See United States v. Discher, 960 F.2d 870 (9th Cir. 1992); United States v. Mills, 810

5   F.2d 907, 910 (9th Cir. 1987).  The Government strenuously objects to providing the home addresses

6   or the home or personal cellular telephone numbers to Defendant.  In non-capital cases, the Government

7   is not even required to disclose the names of its witnesses prior to trial.  United States v. Dishner, 974

8   F.2d 1502, 1522 (9th Cir 1992); (citing United States v. Steel, 759 F.2d 706, 709 (9th Cir. 1985));

9   United States v. Hicks, 103 F.23d 837, 841 (9th Cir. 1996); see also United States v. Bejasa, 904 F.2d

10  137 (2d Cir. 1990) (holding that United States did not improperly deny defendant access to government

11  witnesses whose telephone numbers and addresses the government refused to provide because defendant

12  knew the identities of the government witnesses and presumably knew their telephone numbers or could

13  have contacted them through the exercise of due diligence).

14  **(11)   Jencks Act Material**

15      Rule 26.2 incorporates the Jencks Act, 18 U.S.C. §3500, into the Federal Rules of Criminal

16  Procedure. The Jencks Act requires that, after a Government witness has testified on direct examination,

17  the Government  must  give  the  Defendant  any  "statement"  (as  defined  by  the  Jencks  Act)  in  the

18  Government's possession that was made by the witness relating to the subject matter to which the

19  witness testified. 18 U.S.C. §3500(b).  For purposes of the Jencks Act, a "statement" is (1) a written

20  statement made by the witness and signed or otherwise adopted or approved by her, (2) a substantially

21  verbatim, contemporaneously recorded transcription of the witness's oral statement, or (3) a statement

22  by the witness before a grand jury. 18 U.S.C. §3500(e).   If notes are read back to a witness to see

23  whether or not the government agent correctly understood what the witness was saying, that act

24  constitutes "adoption by the witness" for purposes of the Jencks Act. United States v. Boshell, 952 F.2d

25  1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)).  There is no

26  applicable Jencks material at this time.  If the case proceeds to trial, the Government will produce any

27  materials covered by the Jencks Act relevant to the testifying witness(es).

28      Defendant also requests original I-213s, G-166s and I-215Bs.  As indicated elsewhere, the

1  Government has provided Defendant with copies of the relevant documents and will make available the

2  A-file for Defendant's viewing in order to enable Defendant to request additional materials.  The

3  Government objects to the request for **original** documents.

4  **(12)    Informants and Cooperating Witnesses**

5          The Government is not aware of any cooperating witnesses or informants at this time.   As

6  indicated previously, the Government has produced the reports indicating the names of any percipient

7  witness in this case.  The Government is aware of its obligations to produce exculpatory evidence and

8  will continue to comply with the requirements to produce evidence under Brady and Giglio.

9                                                                      **III**

10            **DEFENDANT'S MOTION FOR LEAVE TO FILE ADDITIONAL MOTIONS**

11          The Government does not object to the granting of leave to file further motions as long as the

12  further motions are based on newly discovered evidence or discovery provided by the Government

13  subsequent to the instant motion at issue.

14                                                                      **V**

15                                                             **CONCLUSION**

16          For the foregoing reasons, the Government requests that the Court deny Defendant's

17  motions, except where unopposed, and grant the Government's motion for reciprocal discovery.

18          DATED: January 22, 2008.

19

20                                                    Respectfully submitted,

21                                                    KAREN P. HEWITT
                                                      United States Attorney
22

23

24                                                    /s/*Rebecca Kanter*
                                                      REBECCA S. KANTER
25                                                    Assistant United States Attorney
                                                      Attorneys for Plaintiff
26                                                    United States of America

27

28

                                            16                    Criminal Case No. 08cr0015-IEG

1

2

3                     UNITED STATES DISTRICT COURT

4                     SOUTHERN DISTRICT OF CALIFORNIA

5     UNITED STATES OF AMERICA,           )   Criminal Case No. 08cr0015-IEG
                                          )
6                          Plaintiff,     )
                                          )   CERTIFICATE OF SERVICE
7                  v.                     )
                                          )
8     LUIS ALBERTO HERNANDEZ-             )
                         VENEGAS,         )
9                                         )
                           Defendant.     )
10

11

12
      IT IS HEREBY CERTIFIED THAT:
13
              I, REBECCA S. KANTER, am a citizen of the United States and am at least eighteen years
14    of age.  My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

15            I am not a party to the above-entitled action.  I have caused service of **RESPONSE AND
      OPPOSITION** on the following parties by electronically filing the foregoing with the Clerk of the
16    District Court using its ECF System, which electronically notifies them.

17            Timothy R.  Garrison

18            I hereby certify that I have caused to be mailed the foregoing, by the United States Postal
      Service, to the following non-ECF participants on this case:
19
              None
20
      the last known address, at which place there is delivery service of mail from the United States
21    Postal Service.

22            I declare under penalty of perjury that the foregoing is true and correct.

23            Executed on January 22, 2008.

24                                                  /s/ ***Rebecca Kanter***
                                                    REBECCA S. KANTER
25

26

27

28

                                           17                Criminal Case No. 08cr0015-IEG